S13A0758. DENNIS v. THE STATE.
(748 SE2d 390)

HUNSTEIN, Justice.

A jury convicted Amin Dennis of malice murder, kidnapping with bodily injury, and other crimes in connection with the deaths of Jerry Lee Lawrence and Harold Reese, Jr.[1] On appeal, Dennis contends that he did not knowingly, intelligently, and voluntarily make his

---

[1] The crimes occurred on August 26, 2009, and the Crisp County grand jury indicted Dennis on November 9, 2009. On August 13, 2010, the jury found him guilty of two counts of malice murder, two counts of felony murder, two counts of kidnapping with bodily injury, two counts of aggravated assault, one count of armed robbery, one count of arson in the first degree, two counts of possession of a firearm during the commission of a felony, and one count of possession of a firearm by a convicted felon. Following a hearing, the trial court sentenced Dennis on September 7, 2010 to two sentences of life in prison without parole on the malice murder counts, three sentences of life imprisonment on the kidnapping and armed robbery counts, one 20-year term of imprisonment on the arson count, and three five-year terms of imprisonment on the firearm possession counts, all sentences to be served consecutively. The remaining felony murder and aggravated assault counts merged or were vacated by operation of law. Dennis filed a motion for new trial on September 21, 2010 and an amended motion for new trial on July 31, 2012, which was denied on September 13, 2012. Dennis filed a notice of appeal on October 10, 2012. The case was docketed for the Court's April 2013 term and submitted for decision on the briefs.

statement to police. Because the trial court correctly ruled that Dennis's statement was voluntary and admissible, we affirm the convictions.

1. The State presented evidence at trial that Dennis and his brother and co-defendant, Corey Dennis, had been watching Reese's house for weeks. In the early morning hours of August 26, 2009, they followed Reese and Lawrence to the 1800 block of Blackshear Road in Crisp County, Georgia, and parked behind Reese's brown Ford Explorer on the side of the road. The brothers ambushed the two men, pulled them from the vehicle, bound them with black electrical ties, and placed duct tape over their mouths and eyes. They put Reese in the back seat of his vehicle while Lawrence lay on the ground. When Dennis asked Reese what his life was worth, Reese offered to pay $3,000, which he said was all the cash he had. Dennis searched the Explorer for money, but found none in it. Lawrence was shot first. Reese then escaped from the car and began to run away, but fell as the brothers chased him. Reese got back to his feet, charged for the gun, was shot in the chest, and fell to the ground, where he was shot again. Dennis and his brother wiped down Reese's Explorer with a cleaning solution, placed Lawrence in the back seat, let the vehicle roll into the cotton field, and set it on fire. As they were driving back to Dennis's house, he threw his revolver into the woods. They started a fire in his yard and spent a couple of hours burning cell phones, a wallet, their socks and shoes, a roll of duct tape, electrical ties, a towel, and a bottle of carpet cleanser. The brothers' first cousin saw Dennis pouring lighter fluid on a fire in front of his house around 3:00 a.m. that day.

Within a few hours, police found the burnt, smoldering Explorer in a cotton field with the charred body of a dead man, subsequently identified by DNA evidence as Lawrence, in the back seat. That evening Dennis told another cousin that he and his brother had committed the killings, the body in the burnt vehicle was not Reese's, and it "would be a while" before police found Reese. The following day police recovered Reese's body 100 to 150 yards from the road on the back side of the same cotton field where they found his vehicle. Reese was barefoot and had duct tape around his neck and over his chin, broken black electrical ties on his left wrist and ankle, and bullet wounds to his head and back. In a subsequent search of Dennis's residence, police found the fire pit in the yard and recovered a set of keys that matched the doors of Reese's residence, a padlock on a shed in Reese's yard, a 1988 Chevrolet Blazer in the shed, and a door to his father's residence next door and black electrical ties that were consistent in size and color with the ones found at the side of the road and on Reese. In addition, police found a second burn pile at the home of the brothers' mother that contained their clothing, Lawrence's

personal belongings, and a gold necklace that Reese was seen wearing the day before he was killed. The medical examiner determined that both Reese and Lawrence died from gunshot wounds.

Dennis challenges the sufficiency of the evidence regarding the two kidnapping with bodily injury counts, arguing that the State presented no evidence that either victim was moved, a necessary element of the crime. OCGA § 16-5-40 (a) states that a person commits the offense of kidnapping when he "abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." For a kidnapping to occur, slight movement is required, provided the movement is not "merely incidental" to another offense. Id. at (b). Our statute states that the movement shall not be considered merely incidental to another offense if it "[c]onceals or isolates the victim" or makes "the commission of the other offense substantially easier." Id. at (b) (2) (A), (B). In his custodial statement, Dennis admitted that he and his brother removed both victims from Reese's vehicle, bound them with electrical ties and duct tape, and then placed Reese in the back seat of his vehicle while Lawrence lay on the ground. Because these actions concealed Reese, isolated the two victims, and made the commission of the armed robbery and murders substantially easier, the movement of the victims was not merely incidental to the other offenses that Dennis committed. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Dennis guilty beyond a reasonable doubt of murder, kidnapping with bodily injury, and the other crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Dennis also contends that the trial court erred in admitting the videotaped statement that he made to law enforcement officers after his arrest because it was not knowingly, intelligently, and voluntarily made. Specifically, he alleges that the two officers who interrogated him made statements that could be construed as suggesting a lighter punishment if he confessed.

To be admissible, a confession must have been made voluntarily without being induced by the slightest hope of benefit or remotest fear of injury. *Taylor v. State*, 274 Ga. 269 (2) (553 SE2d 598) (2001). A hope of benefit generally arises from "promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at

---

[2] Corey Dennis pleaded guilty to the felony murders of Reese and Lawrence and related crimes, and we affirmed the trial court's denial of his motion for out-of-time appeal. See *Dennis v. State*, 292 Ga. 303 (736 SE2d 428) (2013).

all." *Brown v. State*, 290 Ga. 865, 868-869 (2) (725 SE2d 320) (2012). The State must prove by a preponderance of the evidence that the statement was made knowingly and voluntarily. *Bunnell v. State*, 292 Ga. 253 (2) (735 SE2d 281) (2013). When the controlling facts are not in dispute, such as facts discernible from a videotape, we conduct a de novo review of both the facts and the law in determining the admissibility of the statement. *Vergara v. State*, 283 Ga. 175 (1) (657 SE2d 863) (2008).

At a pretrial hearing held on the motion to suppress under *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964), one of the interviewing officers testified that he used a standard waiver of rights form to read Dennis his constitutional rights; Dennis was asked to read the form separately and initial each right; and Dennis, who was attending technical college, appeared to understand what he was doing. The form that Dennis signed stated that he understood his rights and had not been threatened, promised anything, or forced to answer any questions. We agree with the trial court that the officers' statements during the course of the interview that Dennis could help himself by clearing his conscience, could "do something big" by being honest, and should think how he could get back on his career path were statements encouraging him to tell the truth and not promises of a hope of benefit. Furthermore, when Dennis asked the officers about the charge or sentence he was facing, they said they did not know, told him that they could not say, or made no direct response. The officers' erroneous statements that Dennis's co-defendant had cooperated with them and taken responsibility for his actions by telling the truth did not render Dennis's statement inadmissible. See *Daniel v. State*, 285 Ga. 406 (5) (677 SE2d 120) (2009) (use of trickery and deceit to obtain a confession does not make it inadmissible when the means employed were not calculated to procure an untrue statement). Having reviewed the record, we conclude that the State proved by a preponderance of the evidence that Dennis knowingly and voluntarily waived his rights and his subsequent statement was made without being induced by the slightest hope of benefit.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 2013 —
RECONSIDERATION DENIED OCTOBER 7, 2013.

*Timothy L. Eidson*, for appellant.

*Denise D. Fachini, District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General,* for appellee.